okay our next case is case number 24-60370 Sterling versus Jackson Mississippi et al and we will begin and of course Sterling is also et al we will begin with Mark Chalos representing Sterling et al may it please the court I'm Mark Chalos of the Nashville Tennessee Bar I'm here on behalf of the plaintiff's appellants in this case we're asking this court to reverse two related orders from the district court the district court's order on the motion to dismiss and on the motion for judgment on the pleadings I'd like to address four issues during my argument today as an initial matter we are here about the initial pleadings in the case there is no well-developed factual record in fact there's no factual record at all at this point it arises from the Jackson water crisis a catastrophe that was years in the making the plaintiff sorry the defendants asked the district court to make these dispositive rulings based solely on the pleadings which is something the Supreme Court has counseled against on more than one occasion including in the Pearson versus California case so we submit the district court would have benefited would still benefit from a well-developed factual record in making some of these determinations so that's it let me turn to the four issues the first is what is the constitutional right implicated here it is the right to be free from the invasion of bodily integrity through life-threatening substances with no therapeutic therapeutic well but there's no requirement that you drink the water they send you I understand why there was confusion about it I'm not saying that but it's not required that y'all drink it right it's not required in the sense that nobody forcibly poured the water down their throat that is true if you're a resident of Jackson you must sign on to the municipal water system that's your only reasonable source and you pay for it right okay so that is an issue but you can use water for a lot of things besides drinking it that's right and so the question is they did say there's lead in the water now they also said it's fine which was not true but knowing that there's lead in the water does that give people enough to kind of go well maybe I better not drink this and again I think that's where a factual record would have been beneficial for the district court because it depends at what time period you're talking there were many years where they made no disclosure at all that there was lead in the water there is a point where they said there's lead but it's fine you can boil the water and you'll be fine it turns out boiling the water makes it worse but that's where I think a factual record would have been helpful for the district court but it is not the case that from the get-go they said there is lead in your water but it's okay they didn't say anything about the lead for a good number of years but our case is about more than that. But there is some confusion on that about kind of when they knew there was a problem. There is and again that's a factual issue. So you're saying well all of this is great Judge Haynes but I want to wait till we've had some facts on it and some discovery is that your point? It is the point your honor and what we pleaded is that the city and the city actors knew all about this from 2013 or maybe before that even and it was years later that there was any disclosure to the community but again you know we pleaded that the district court has more or less disregarded that but it's a . . . Let me go back to your answer to one of Judge Haynes' questions. Did I understand your point to be that you had no choice, your clients had no choice but to drink the water because it was supplied by the city and you turn on the faucet and that's the water that comes out? In part your honor. They had no choice but to be connected to the city water. If you're in the city you have to have the municipal water. But you also say in your pleadings though if I'm not mistaken that you would have obtained water for drinking purposes elsewhere had you known of all of the things that you claimed the defendants were . . . false statements.  That's right. If somebody had said in 2013 hey there's . . . we've put lead and let me focus on that for just one second. We're not saying lead magically fell out of the sky. We're saying these defendants are responsible for putting the lead there in the first place. The point I want to clarify though again in response to Judge Haynes' question is whether there was an option and it seems like in your pleadings you're saying we did have an option. We didn't exercise it because we weren't aware of the gravity of the lead in the water. They had an option in the sense that there was no other source for municipal water. So they couldn't say well we won't choose city water we'll choose Corporation X's water to come into our house. Well granted there's a cost factor but I mean people procure water from other sources. It's this that you would have to get.  And your pleadings seem to suggest that you would have exercised that option had you known that the water coming out of the faucet was not good for you, not consumable from a health point of view. Is that correct? That's correct, Your Honor. Or they could have consented to drink the water and maybe it's a different case. The problem here from a constitutional standpoint is that the plaintiffs here, the committee members, had no ability to consent because they were not told. They were affirmatively lied to about whether this water was harmful to them. And it's the consent issue that deprived them of that. Well and you also kind of have the issue while you can get these bottles your kids might go drink out of the sink. There's all kinds of other things about the sink and you have to pay for the water anyway. So it is a little different animal from just X or Y. I understand that. But I wonder, so you keep talking about the community, how is this limited beyond just everybody in the city? Is it just people who own houses that are part of this class and that's what you think the limit is? No. And we, while there may be an issue if we get to class certification on exactly defining the class. But right now as pleaded it is anybody who was living in Jackson during the relevant time and exposed to the water. So it includes renters. It includes owners. It includes children. Okay but when it's a generality that's a, that's not a case to file. It is a defined group of people. It's a no. Yeah that's what I'm asking. What is the defined group? If it's everybody, people that own houses, people that, I mean then it's everybody in Jackson except maybe if I went for a weekend to hang out in Jackson maybe I'm not part of it. But other than that, it's everybody that lives there? It was people who were residing in Jackson. That includes the children. They didn't own or rent. They were part of a family unit that was in the house being exposed. The water was used to make formula for example. The water was pumped through the school system. It was pumped into every home as well. So it's the people. So how do you deal with the generality issue? Well it is a specifically definable group of people. Jackson knows who its residents are. We can define exactly who the residents are. We can through property records for owners, through voter registration, through driver's license. It's a defined group of people. It's the people who were living in Jackson during this time period and it's a defined group. And it's a knowable group. If we ever get to class certification, we're going to be able to identify and ascertain exactly who those people are. So with respect to the four issues, first is the constitutional right, a subsidiary question there is whether it was clearly established at the time of the relevant conduct. And that is only a relevant inquiry with respect to the individual defendants. There's not a clearly established issue, a qualified amenity issue for the city itself. The third issue is the state-created danger issue which is something we have taken this court's invitation in the Fisher v. Moore case, the dissent from the denial of non-bonk review where this court or at least six or seven judges of this court suggested that litigants should continue asking this court to decide the state-created danger issue. We are here. We have briefed that, I think, carefully and laid out the contours. And then the fourth issue which I think I can dispose of fairly quickly is the issue of whether the district court should exercise supplemental jurisdiction over the related state law claims against these defendants and others. I don't think there's a disagreement that that question turns on whether this court reverses the district court's rulings on the motion to dismiss and the motion for judgment on the pleadings. If this case is sent back to the district court, we submit that the court should hear all the related state law claims as well. I don't know if there's a disagreement on that second point, but I think that's all that I need to say about that issue or intend to say on that unless the court has questions. So let me go back, if I may, to this right, this right of bodily integrity, the right to be free of life-threatening substances with no therapeutic benefit being introduced by the government into individuals without the individual's consent. That is a right that traces its lineage back to the Supreme Court. Those cases that we've cited go back to, as my kids would say, the 1900s, and that's case from 1990, the Kruzan case from 1990, the Roshan case from 1952, the Winston case from 1985, all of which build on the foundation that an individual's right to bodily integrity is sacred, founded upon informed consent, and may be invaded only upon a showing of government interest. It's the informed consent issue that I think is central here. While there may have been other options, for example, people could have gone out and purchased massive amounts of bottled water if they had known the truth about what the city officials in the city had done, but that's an issue of informed consent. They have the constitutional right to know the information, to know what the city officials, to know what the city had done that potentially led to life-threatening substances being injected into their bodies through their water. Let's go back now to the 1800s. The Supreme Court in the Union Pacific versus Botsford case from 1891 said that no right is held more sacred or is more carefully guarded by the common law than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. The court went on, absent lawful authority, invasion of one's body is an indignity, an assault, and a trespass prohibited at common law. The Gerton case, which is the Sixth Circuit case that arose from the Flint water crisis, which is eerily on point in terms of its facts, that court, in analyzing the Supreme Court and other precedent, observed that the right to personal security and to bodily integrity bears an impressive constitutional pedigree. This common law right is first among equals. And I want to be clear that the right at issue here that we've alleged in our second amended complaint is not that the state has a constitutional obligation to protect people from environmental contaminants. And it is not that there is a constitutional right to water service. It is that, as pleaded, the right to be free of your invasion of life-threatening substances with no therapeutic benefit being introduced by the government without the individual's consent. Counsel, maybe I'm getting a little ahead of your checklist, and I appreciate you telling us the four issues you wanted to discuss, but I don't want the time to run out. Since we're talking about a substantive due process claim, do you think there's a difference between a conscious, shocking, substantive due process claim and a state-created danger claim, if we take away the third-party harm element? Are we talking about the same thing here, or are those two different things, and which one are you, or maybe you're arguing both in this case? Yeah, that's a great question, Your Honor. I've been trying to, in my mind, delineate between what is a state-created danger, standalone cause of action, which we recognize has not been recognized yet by this Court. I don't think we even need to get there. I think we have such affirmative conduct, at least that we've alleged, knowing affirmative conduct based on facts that we've alleged that defendants knew and nevertheless took affirmative actions. For example, switching the water source from well water to surface water using the Pearl Pipes that would lead to more water, more lead in the water. Those type of actions, we don't have to get to a separate cause of action. Those just violate their constitutional rights, period. But again, we don't, that's our allegation. Right now, we're confined to our allegations. I think a more well-developed factual record would be helpful for everybody, including the District Court on that. But I don't think, to short answers, I don't think we have to get to the state-created danger claim in all candor. I think that there could be a state-created danger claim alongside of the straight-up affirmative violation of the Constitution. Does it matter if there are state law claims for fraud, misrepresentation, any other type of tortious conduct that might be available when we consider whether there's a substantive due process claim? I don't think that matters in the sense that I don't think the existence or potential existence of those causes of action preclude finding a constitutional violation here. Aside from the fact that we would be entitled to plead alternative theories, I don't think there's anything in state law that would, certainly not preempt federal law, obviously, but would impair in any way the right or preclude the right under the Constitution. The constitutional right is pretty central to what's happened here, we would suggest. Now, with respect to, let me pivot to the deliberate indifference issue, which I think was something that, respectfully, the district court erred in. The court, the district court formulated the standard here, and I think it was erroneous. The district court said, and this is on record page 1938 in one of her orders, the court concludes that, without a constitutional duty to protect, a bodily integrity claim requires, quote, something more than deliberate indifference to a foreseeable risk of harm. We submit that, based on the Supreme Court's decision in Lewis, and lots of other cases, that's just the wrong formulation. What the Supreme Court said in Lewis, and Lewis is the case where they had three, the court broke it up into three categories, on one end you have intentional deliberate conduct where you're intending to harm this person, on the other end you have mere negligence, and then you have this middle category. As the Supreme Court said, this middle category, whether the point of conscious shocking is reached when injuries are produced with culpability falling within this middle range, following something more than negligence, but less than intentional conduct, such as reckless or gross negligence is a matter for closer calls. To be sure, we've expressly recognized the possibility that some official acts in this range may be actionable under the 14th Amendment, and this court, in Hernandez versus Texas, and a number of other cases, formulated this standard as, to act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety, and that's what the plaintiffs have alleged here. There is no something more required, the something more is the deliberate indifference to a foreseeable risk of harm, period, that is the standard. The Supreme Court has never held, and this court has never held, that you must have allegations of actual intent to injure, or that the individual must be in state custody, or that the individual must be in some other special relationship with the state in order for there to be a deliberate indifference claim. So we submit that the district court erred in that regard, I see my time is almost up, so with that, we ask that this court reverse the district court, send us back to the district court for, among other things, a creation of a more fulsome factual record on which the court can maybe revisit these issues on summary judgment if we get there. Thank you. All right, thank you, you've saved a little time for rebuttal. All right, we will turn to Clarence Webster for Jackson, Mississippi, et al. Good morning, Your Honors, and may it please the Court. The concept of substantive due process should not be expanded lightly. It is neither an avenue through which to pursue tort damages, nor does it provide a gate through which to second-guess the decision. Why did Jackson lie? Well, plaintiff filed a complaint that has 115 footnotes. No, I mean, why did they lie about the water when they sent out the lead and just said, but it's fine, why did they lie? But they didn't, Your Honor. What the complaint shows, including the exhibits to the complaint and the documents put into the complaint, what it shows is, is that the city defendants made the citizens aware of the lead exceedance within 24 hours of being provided notice of it, and then gave out specific warnings as to how the water should be used, including telling the citizens that children under five and pregnant women should not use the water, that the water should not be consumed hot, that the water should only be consumed after the water has flowed out of the faucet for two minutes. There were clear precautions that the city gave. Now, whether the city should have gave different precautions or whether the city should have done something different is not a matter of constitutional concern, and it's not conscious shocking behavior, because the city did put the citizens on notice and did provide some precautions on how to proceed. But your opponents said they knew well before that and that that was still not sufficient, what they said. And again, plaintiffs' complaint and the exhibits say otherwise. The articles on which they cite say that the Mississippi Department of Health did not make the city aware of the lead exceedance until January 26th or 27th of 2016. And one thing about the lead exceedance that I would like to point out, this is not a decade-long problem. This was a year problem for the city of Jackson. Exhibit 7 to the plaintiffs' complaint shows that the last time there was a lead exceedance in the city of Jackson was in December of 2016. So the city was made aware of the lead problem in January of 2016. The lead problem was resolved. There's been no lead exceedance since December of 2016. Well, my impression is that the city officials very artfully avoided denying what they knew was wrong with the water. The water was apparently, from what I read, was these lead bands that were around the city's transmission lines ever so many feet were leaching lead into the water that the people drank and bathed in. And the city officials never said, oh, our lines are all good. They're not leaching lead. They never outright lied to that extent, but they avoided disclosing to the populace what was happening and that they knew was happening. So why wasn't that a big lie? Well, it wasn't a lie in the sense that the city made the citizens aware that there was a problem with the lead. At the time that the city made its first statements on January 28th of 2016, all that the city officials knew were that 13 homes out of 58 homes had tested positive for lead in excess of what the lead and copper rule allows. What the city also knew was that this could have been a home-to-home problem as opposed to a street-to-street problem or a citywide problem. And so based on that information that was available to the public officials at that time, they made particular statements to the public. But in making those statements, they also provided precautions and guidance on how to control it. So you just doubled down on the idea that the city officials did not know that all of their transmission lines probably were leaching lead into the populace's homes. Well, and that is a fact question as to whether there is lead on the public side of the water system. But what I'm saying, Your Honor, is that once the city was made aware of the problem, it informed the public. And whether the city should have said something different or whether the city should have given more guidance is not a matter of constitutional concern. In fact, this Court said in M.D. v. Struckenberg that a government actor is not deliberately indifferent to a substantive risk of serious harm. If aware of the risk, it responds reasonably, even if the harm is not averted. Well, in Kruzan, the Supreme Court, in effect, said that people have a right to know when something toxic is being induced into their body. And they have a right to give informed consent to things that are put into their body. Well, the people in Jackson were not completely informed about what was happening, about how this lead was getting into their children's bodies. So why isn't that the same thing? Violation of bodily integrity by more or less intentional misleading people into thinking they can use this water. Well, as an initial matter, the complaint is clear that there was no intentional conduct, that there was no intent to harm, that is, conduct on behalf of the city. Well, reckless. If it wasn't intentional, was it reckless or was it deliberate indifference to something that the officials knew was very dangerous? It was not, Your Honor. In that the city officials did not sit on their hands. What they did was, was once they were made aware of a problem, they made the public aware of that problem as well as provide precautions as to how to proceed. I don't know what the plaintiffs would have expected the city officials to say differently, but the water is safe to drink, subject to certain precautions, and then setting forth what those precautions were. Plaintiffs do not dispute that the water can be safe to drink, subject to the precautions. There is no allegation in the complaint that the precautions were insufficient. In fact, there's no reference to the precautions that were issued by the city of Jackson. You would have to go to the exhibits that the plaintiffs rely on, including exhibit two, where in a press release it sets out what the precautions were on how to drink the water and specifically offering guidance as to children under the age of five and pregnant women not consuming the water at all. But again, the question becomes, this is not an issue of whether the city of Jackson was negligent or if it violated a regulation or if it violated a statute. Those are all regimes under which these claims could be heard should plaintiffs bring them. This question is whether there was a violation of a constitutional right through deliberate indifference. And to plead deliberate indifference, this court said in La Fall, the plaintiff's much-alleged conduct that reflects complete indifference to risk. When the actor does not care whether the other person lives or dies, despite knowing there is a significant risk of death. And here, that's not what occurred. The city of Jackson did not learn of a lead exceedence and then sit on his hands. It made the public aware. And there are, when you look at plaintiff's complaint, their theory comes down to two things. And the law requires that the constitutional right at issue be clearly defined. And preserving the constitutional proportions of such a due process demands an exact analysis of the circumstances before an abuse of power is condemned as consciously shocking. And in the first instance, what plaintiffs are saying is, is they have a right to bodily integrity to be free of contaminated water. And that just is not the law. They have a statutory right. They may have a right in common law to file a tort claim. But there is no constitutional right to water service or clean water. And in the middle of that is, is there a right to how a municipality provides a water once it, whether a municipality. But what about when they are sending the water and requiring them to take the water and charging them for the water? Does that make a difference? And again, no, Your Honor, it doesn't. This is, there is no allegation in the complaint that this is a special, there's a special relationship between the city of Jackson and its water users. These are non-custodial individuals. They're not being held in custody. And the question is not whether the citizens of Jackson in a constitutional sense can or can or could not or can or cannot drink water from another source as well. They could. And in this instance, they could. They could have gone to bottled water once they were made aware of the lead exceedance. There are parts of the city actually, and this is, you know, not in the complaint, but they went to well water systems in different parts of the city. So, in a constitutional sense, there was no requirement that anyone consume the water. In the absence of a special relationship, the deliberate indifference standard is high because these were non-custodial citizens. And again, in carefully defining the right that was at issue, these plaintiffs claim that they have a right of bodily integrity to be free of the provision of unsafe water. That is their first position. And that is just incorrect on the law. Both the courts and the federal government have stated that it is non-justiciable the right to water in federal courts. The second right violation that they claim is that they had a right to be free of these statements that they believe or that they allege were incorrect. And except the allegations and the complaint is true, that alone might get them to a constitutional violation for a few reasons. Judge? Counsel, how can you stand there and say that when under the spring court cases of Cruzan, Harper, and Lewis, these people had a right to be free from being surreptitiously induced toxic water placed in their systems? And that right was violated. Again, Your Honor. And it's not based on anything that is recent. You could say the Flint, Michigan case made the whole country aware of the fact that people in some areas, underprivileged people, were not maybe being given water that's free of toxins. And Jackson appears to be one of them. Well, Your Honor, Flint, I mean, even in the . . . But this is not based just on Flint or upon Curtin or whatever the name of the case is. Yes, sir. It goes back to the spring court cases that I just mentioned. Yes, sir. This case is not like Roshan or Washington or any of the other cases where there was a forced, deliberate, intentional intrusion into the bodily integrity of an individual. In fact, Judge Johnson, in her order, said that there's a yawning difference between providing water that is contaminated and forcing medicine down someone's throat. And so I would say that they're not factually analogous. But I'll go back to the Querton case. Even in Querton, the majority, it's a 2-1 decision, said that there's no right to clean water. The issue was this lack of informed consent. And in that case, the court found that there was no lack of informed consent because there were allegations that the plaintiffs lied about test . . . that the defendants, excuse me, hid test results, that they lied about test results, that they knew the source of injury that was occurring in Flint was the water system, but they said it was the hospital. That's not what we had in this case. In this case, what we had was the city officials were made aware of a lead exceedance. And once they were made aware of the lead exceedance, within 24 hours, they had made the public aware of it and provided precautions. And importantly, based on the information that is in Plaintiff's Complaint, one of the latter exhibits, it says that the EPA generally believed that it would take a year or so to take care of the lead exceedance, and that's what it took in the city of Jackson. The exceedance was announced in January of 2016, and it was resolved in December of 2016. So we're talking about a year-long period where statements were made, keeping the public aware that there was this issue, and in fact, whenever there was a lead exceedance, and you can look at Exhibit 3 or 4 of the Plaintiff's Complaint, there were notices given of the lead exceedance. Weren't those facts in dispute? Well, Your Honor, when the plaintiffs' averments are contradicted by their own exhibits and their own articles, those exhibits and articles control, and we do not contend that the exhibits and articles in any way dispute the facts that the plaintiffs raise, but it gives the proper context and it tells the whole story. I believe that the, I don't believe, the story that the plaintiffs tell is a very truncated story where they cherry-pick from their own articles. However, when you read the articles in total, which is what Judge Johnson did, she did an exacting analysis of the circumstances based on plaintiffs' own articles and exhibits to come to the factual conclusion that she came to. So there is no factual dispute as to whether the city gave precautions because it's in the articles that plaintiffs relied upon. Plaintiffs just did not say in their complaint that there were precautions. They just didn't address it in their complaint at all. Now, going to whether false statements made in response to an ongoing environmental crisis alone could give cause to a due process violation, I believe the only cases remotely on point are the Benzeman case and the Lombardi case out of the Second Circuit, and in those cases we were dealing, or the court was dealing with statements that were made in response to the 9-11 incident and whether the air was safe to breathe following 9-11. In Lombardi, those claimants were first responders who were immediately told that the air was safe to breathe and they could go back down into the Twin Tower area, and in the second case, it was a year later when officials told individuals that it was safe to go back to their homes. So we're talking about an immediate aftermath and then a year period later where the court said it is a very novel theory that coercion via public pronouncement could be the basis of a substantive due process violation, and to find in this case that public pronouncements can be a basis for substantive due process would greatly extend that concept here in the Fifth Circuit, and that would have a chilling effect on public officials. One thing that the court pointed out in Benzeman and Lombardi was that public officials are forced with comparing competing policies and issues when they make statements to the public about whether the environment is safe, and it is only in instances where there is an attempt to harm in making those statements that the conduct should rise to conscious shocking, and again, plaintiffs do not contend that there was an intent to harm in this case at all. The deliberate indifference context or the deliberate indifference standard alone does not apply in every case, and sometimes . . . excuse me, deliberate indifference standard does not apply in every context. Sometimes an intent to harm is required, and we contend that in the statements that were made in the immediate aftermath of the lead exceedance were not made with an intent to  They were made based on the information that was available to the City of Jackson at the time, and again, the only information that the City of Jackson had at the time was that 13 homes out of 58 had tested positive for lead exceedance, and of those 13 homes, there were homes that were on different streets, so from house to house there was not a lead exceedance, and it appeared to be a home-to-home issue as opposed to a citywide issue, which is what the city made the public aware of and then offered precautions as to how the water could be consumed safely. What separates your regular tort case like this from a bodily integrity case is the direct intentional intrusion on the body of someone. That's why these bodily integrity cases appear almost exclusively in the context of sexual abuse cases or in cases of excessive force or in cases where a teacher or police officer somehow constrained, touched, or directly infringed on the bodily integrity of someone. That is not what we have here. What we have here is that the city managed this water system in taking plaintiffs' allegations in the light most favorable to them and suboptimally. You say that the bodily integrity cases in Clusan and Harper and the other cases that I've mentioned only occur where the perpetrator intentionally wants to harm the public. No, the conduct in and of itself is intentional. The purpose of the conduct is to impact the person's body. Nothing that the city here did was to purposefully impact the body of a citizen. With that, I think my time has elapsed. Any more questions? Well, I don't think he's answered my question yet. If you'd ask the question again, I will make every effort to answer it. Go ahead. Okay. Well, I just asked you the question. I said you seem to be arguing that the bodily integrity cases that protect people from being induced toxic medicine, toxic food, toxic water only protects them against an intentional intrusion into their body. I think that's wrong. I think your argument on that score is wrong. Well, Your Honor, based on the cases that you rely upon, it is forcing medicine down someone's throat. It's removing their life support. I mean, it is rape cases, sexual assault cases. It is cases where someone is putting their hands on the body of someone else, and that's the intentional conduct. It is intending to go into the province of someone's body, and that's not what we have here in the city of Jackson's case, Your Honor. Well, it seems to me that what we have here is very much in dispute, and possibly the record might support a jury in finding that there was at least deliberate indifference or recklessness in what the city did. They didn't protect the people from the toxic lead substances in the water that they knew were leaching out from the city's lines, and they misled people into thinking that it was safe to continue to drink and to bathe in that kind of water. Okay. Did you want to respond to that or no? Pardon? I'm sorry. I just wanted to see if he had just a sentence or two in response to what you just said. Yeah. Your Honor, I respectfully disagree with that premise. I think, or with the statement, I think at best what plaintiffs may have alleged is a negligence claim at best, but they've not alleged a constitutional claim. Okay. Did you have any more questions or no? No. Okay. We'll let you go, and we'll get the rebuttal on that. Okay. So you have your rebuttal, and I want to know, I mean, basically your opponent has said, y'all, the stuff you gave the court shows that what you're saying isn't so.  So, Your Honor, Jackson did lie. And again, these are factual questions, and Mr. Webster had some very sort of benign explanations for their conduct, and they may have very good defenses, but again, we're confined here today to the four corners of our complaint and the allegations we've made, and an alternative would be to do this when we have a more well-developed factual record where we can sort through what did they know, when did they know it, who said what. Maybe they didn't mean what they said. Maybe they meant to say something different. But let me address this issue. Did Jackson lie? They did. They did lie. They said, Mr. Webster said, well, we didn't know until 2016. First of all, we've pleaded in our complaint they knew in 2013 that they had a pH problem with their system, that this pH problem was leading to higher lead results. As a predicate, no amount of lead is safe for human ingestion. But they knew back then. He said the documents you filed show the other way. We disagree with that. We think they show very clearly that Jackson lied. So he said they didn't know until 2016. Well, in 2018, and this is in the complaint at 1485 through 1486, in 2018 their director of public works, Mr. Miller, said there's been no detecting of lead or copper in the water supply. That's demonstrably untrue. They said in 2016, this is the director of public works, Ms. Powell, this is not a situation where you have to stop drinking the water. This is in 2016 that they're making this statement. Those are factually not true. And to the extent that he said the city responded responsibly, well, maybe they did, maybe they didn't. Again, that's a factual question, but based on the allegations, and that's what we're here on, they did not act responsibly. A few quick other points. The question of duty that Your Honor mentioned, there's Supreme Court cases, the Goldberg v. Kelly case from 1970, 397 U.S. 254. The Supreme Court has long recognized that the government does not have to provide a service, but once it does, the provision of that service is subject to constitutional restraints. And the Supreme Court in the Dandridge v. Williams case, this is Justice Marshall, the court has already recognized several times that when a benefit, even a gratuitous benefit, is necessary to sustain life, stricter constitutional standards, both procedural and substantive, are applied to the deprivation of that benefit. So, the idea that the city maybe didn't have to provide the water, but they did, and under state law, they probably do have to do it. They did it. They put lead in that water. They did things that caused lead to be in the water, and then they lied about it. And they certainly didn't give the information to the individuals to make an informed decision about it. That is coercion by deception. There is no constitutional requirement that the coercion must be by force. Okay. Any further questions? Okay. Thank you. We appreciate both sides. The case is now under submission. And this is the end of this panel's week. So, thank you all.